

**FILED**
JUN 17 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Magistrate Case No.: '08 MJ 8546 |
| Plaintiff, | COMPLAINT FOR VIOLATION OF |
| v. | 21 U.S.C. § 952 and 960 |
| Moises Rabi LOPEZ-Duarte | Importation of a Controlled Substance (Felony) |
| Defendant. | |

The undersigned complainant being duly sworn states:

That on or about June 16, 2008, within the Southern District of California, defendant Moises Rabi LOPEZ-Duarte did knowingly and intentionally import approximately 41.14 kilograms (90.50 pounds) of marijuana, a Schedule I Controlled Substance, into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 952 and 960.

The complainant states that this complaint is based on the attached Statement of Facts incorporated herein by reference.

BRANDON M. WOOD
Special Agent
U.S. Immigration & Customs Enforcement

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 17th DAY OF JUNE 2008.

PETER C. LEWIS
UNITED STATES MAGISTRATE JUDGE

UNITED STATES OF AMERICA
    v.
Moises Rabi LOPEZ-Duarte

## STATEMENT OF FACTS

This Statement of Facts is based on the reports, documents, and notes furnished to U. S. Immigration and Customs Enforcement Special Agent Brandon Wood.

On June 16, 2008, at approximately 1005 hours, Moises Rabi LOPEZ-Duarte entered the United States at the Calexico, California, West Port of Entry (POE). LOPEZ was the driver and sole occupant of a 1991 Dodge Grand Caravan with Mexican license plate number BEE4940.

Customs and Border Protection Officer (CBPO) L. Ledbetter was manning primary lane two (2) when the driver of a 1991 Dodge Grand Caravan presented a valid DSP-150 identifying him as Moises Rabi LOPEZ-Duarte. CBPO L. Ledbetter received a negative Customs declaration from LOPEZ. LOPEZ stated to CBPO L. Ledbetter he was going to Calexico to "Pep-Boys" to go shopping. LOPEZ stated he was the owner of the vehicle for approximately a month. CBPO L. Ledbetter conducted an inspection of the vehicle and noticed that the undercarriage of the vehicle looked low. CBPO L. Ledbetter referred the vehicle to the vehicle secondary lot for a more intensive inspection of the vehicle. When LOPEZ was notified to go into the secondary lot he asked CBPO L. Ledbetter, "that's it?" as if he had passed primary inspection.

In the vehicle secondary lot, CBPO E. Velazquez received a negative Customs declaration from LOPEZ. CBPO E. Velasquez began to inspect the vehicle when Customs and Border Protection Canine Officer (CEO) A. Garcia passed the vehicle conducting a lot sweep of vehicles in the vehicle secondary lot with his assigned Human-Narcotics Detector Dog (HNDD). CEO A. Garcia's HNDD alerted to the rear door and the driver's side rear panel of the vehicle. CEO A. Garcia notified CBPO E. Velazquez of his HNDD's alert.

CBPO E. Velazquez performed an intensive inspection of the vehicle and discovered eight (8) packages within the rear quarter panels, seven (7) packages in the spare tire and thirty two (32) packages in a floor compartment. CBPO E. Velazquez probed a package and a green leafy substance was extracted that tested positive for marijuana. A total of forty seven packages (47) packages weighed 41.14 kilograms (90.50 pounds).

Special Agent (SA) Brandon Wood placed LOPEZ under arrest for violation of Title 21 United States Code 952 and 960, Importation of a Controlled Substance. LOPEZ was advised of his Constitutional Rights, per Miranda, which he acknowledged and waived.

LOPEZ stated that he was given the car he was driving as a gift from his brother-in-law, Francisco Noe AVILES, approximately a week ago. LOPEZ stated AVILES bought the vehicle and gave it to LOPEZ. LOPEZ stated the vehicle was going to be put in his name. LOPEZ stated AVILES borrowed the vehicle on Saturday, June 14, 2008, and returned it the night of Sunday, June 15, 2008. LOPEZ stated AVILES told him to take the car to a "Pep-Boys" in Calexico, California where a friend of AVILES named Ramos BELTRAN worked. LOPEZ stated AVILES gave him a phone and showed him the number to call when he arrived at "Pep-Boys."

LOPEZ stated BELTRAN was to look at the vehicle and run a computer diagnostics test to fix a problem that was causing warning lights to be on in the vehicle or to take the lights out since AVILES did not like the lights to be on.

LOPEZ had three different key rings on his possession at the time of his arrest. LOPEZ stated one ring was for his house keys and the other ring was AVILES'. The third key ring was in the ignition of the vehicle. LOPEZ had two identical cell phones in his possession at the time of his arrest. LOPEZ stated one was his and one was AVILES'. LOPEZ stated he did not know how many miles the vehicle had on it.

In the vehicle at the time of arrest was a handwritten paper by a man named Oscar Urias Barreras turning over the vehicle to a Sr. Moises Rabi Lopes Duarte. LOPEZ stated he did not know an Oscar Urias Barreras.